IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

**OUSMAN SONKO,**

    Petitioner,

v.                                            Civil Action No. 2:24-cv-656

**PAM BONDI, et al.,**

    Respondents.

## REPORT AND RECOMMENDATION

Since February 14, 2023, Petitioner Ousman Sonko ("Petitioner" or "Sonko") has been held in federal immigration detention, presently at the Caroline Detention Facility in Bowling Green, Virginia. He now petitions the court for a Writ of Habeas Corpus under 28 U.S.C. § 2241, arguing that his continued detention under 8 U.S.C. § 1226(c) without a bond hearing violates the Due Process Clause of the Fifth Amendment to the United States Constitution. As a remedy, he seeks immediate release from detention or an individualized consideration of bond by an immigration judge.

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), the assigned district judge referred the motion to me for a Report and Recommendation. The court heard oral argument and additional procedural proffers on June 5, 2025. Because Petitioner's due process claim has merit and, for the reasons explained in detail below, I recommend that the court GRANT

1

in part and DENY in part Sonko's Amended Petition for a Writ of Habeas Corpus, (ECF No. 16).

### I. STATEMENT OF THE CASE

#### A. Overview of the Detention Process Under 8 U.S.C. § 1226

8 U.S.C. § 1226 governs the arrest and detention of aliens pending removal proceedings. See 8 U.S.C. § 1226. While § 1226(a) authorizes the Attorney General to decide whether to detain or release an alien, § 1226(c) states that the "Attorney General shall take into custody any alien who" is convicted of certain crimes, including crimes of moral turpitude and aggravated felonies, and that such aliens may be released:

> only if the Attorney General decides pursuant to section 3521 of title 18, that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation . . . .

Id. § 1226(c)(4).

Additionally, in order to obtain release under § 1226(c), a detainee must "satisf[y] the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." Id. Congress intended mandatory detention under § 1226(c) to limit the number of aliens convicted of crimes who did not appear for their deportation proceedings and to prevent them from committing

additional crimes pending proceedings. See Demore v. Hyung Joon Kim, 538 U.S. 510, 518-21 (2003).

B.   **Factual and Procedural Background**

Sonko, a native of the United Kingdom and citizen of The Gambia, is currently detained pursuant to § 1226(c) after an Immigration Judge ("IJ") found him removable under § 1227(a)(2)(A)(iii), following his conviction of two aggravated felonies—Conspiracy to Commit Money Laundering and Identity Theft. Resp't's Opp'n Pet. Writ of Habeas Corpus ("Opp'n") (ECF No. 17, at 3-4); Opp'n Ex. 1 (ECF 17-1, ¶¶ 6-7). His convictions in 2018 resulted in an eighty-month sentence, and on February 14, 2023, he was transferred into U.S. Immigration and Customs Enforcement ("ICE") custody and placed in removal proceedings under 8 U.S.C. § 1227(a)(2)(A)(iii). Opp'n Ex. 1 (ECF No. 17-1, ¶ 7). On March 9, 2023, an IJ found Sonko removable, but Sonko later sought to adjust his status based on a Petition for Alien Relative filed by his wife, a U.S. citizen. Id. ¶¶ 9-13. Following two short continuances, the Immigration Court heard the merits of Sonko's petition to adjust status, denied relief, and ordered him removed on February 9, 2024. Id. ¶¶ 14-19. Sonko did not appeal the removal order. Id. ¶ 20.

ICE began efforts to obtain approval from The Gambia to deport Sonko in March 2024, and he was interviewed by the Gambian consulate in August 2024. Id. ¶¶ 21-22. In November 2024, when

3

his removal-related detention had reached twenty months, Sonko filed his Petition under 28 U.S.C. § 2241, alleging that his continued detention with no date of removal violated due process. Pet. (ECF No. 1). Shortly thereafter, The Gambia issued his travel documents and delivered them to the deportation officer on November 26, 2024. Opp'n Ex. 1 (ECF No. 17-1, ¶ 23). But the next day, Sonko moved, pro se, to reopen his immigration proceedings and to stay his removal on the grounds that his wife would suffer extreme hardship from his deportation due to her serious health conditions. Id. ¶ 25. The IJ granted Sonko's pro se motion to stay removal pending adjudication of the motion to reopen. Id. ¶ 26. The motion to reopen was granted on January 7, 2025, and Sonko then sought additional time to obtain an attorney resulting in additional continuances in February and March. Id. ¶¶ 27-28. In the meantime, Sonko's counsel in these proceedings moved to amend his habeas petition since he was no longer awaiting removal, but again contesting removal based on his motion to reopen. See Pet'r's Mem. Supp. Unopposed Mot. Leave to File Am. Pet. (ECF No. 13, at 1-2).

At the June 5 hearing in front of this court, Sonko's counsel[1] provided an update on the status of Sonko's motion to reopen.

---

[1] Sonko's counsel indicated that he represents Sonko only in his § 2241 habeas petition, and that Sonko is proceeding pro se on his motion to reopen. As a result, Sonko's counsel had limited information beyond what is described in this Report.

4

Sonko's counsel indicated that a final merits hearing was scheduled for July 30, 2025, in front of an IJ. If the IJ denies Sonko's motion, he intends to appeal the decision to the Board of Immigration Appeals ("BIA"), and, if necessary, to the Fourth Circuit. The government did not indicate whether it intended to appeal should the IJ grant relief from removal.

## II. ANALYSIS

### A. Petitioner's Continued Detention Raises Due Process Concerns Warranting an Individualized Bond Hearing.

Under the Due Process Clause of the Fifth Amendment, no person shall "be deprived of . . . liberty . . . without due process of law." U.S. Const. amend. V. This protection extends to "aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001); see also Trump v. J.G.G., 145 S. Ct. 1003, 1006 (2025) ("It is well established that the Fifth Amendment entitles aliens to due process of law[.]" (quoting Reno v. Flores, 507 U.S. 292, 306 (1993))). "At the same time, however, [the Supreme] Court has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." Demore v. Hyung Joon Kim, 538 U.S. 510, 523 (2003).

Following the Supreme Court's recognition in both Zadvydas v. Davis and Demore v. Hyung Joon Kim that prolonged detention of aliens without justification could violate due process, district

5

courts began ordering detention hearings for aliens detained for long periods of time without one. To determine whether such prolonged detention without a detention hearing violates due process, most judges in this court apply a five-factor balancing test under Portillo v. Hott, 322 F. Supp. 3d 698, 707 (E.D. Va. 2018). The five factors include:

> (1) the duration of detention, including the anticipated time to completion of the alien's removal proceedings; (2) whether the civil detention exceeds the criminal detention for the underlying offense; (3) dilatory tactics employed in bad faith by the parties or adjudicators; (4) procedural or substantive legal errors that significantly extend the duration of detention; and (5) the likelihood that the government will secure a final removal order.

Id. Courts in this district have consistently followed this balancing test in resolving claims brought by immigration detainees under § 1226(c). See, e.g., Abreu v. Crawford, No. 1:24-cv-1782, 2025 WL 51475 (E.D. Va. Jan. 8, 2025); Santos Garcia v. Garland, No. 1:21-cv-742, 2022 WL 989019 (E.D. Va. Mar. 31, 2022); Martinez v. Hott, 527 F. Supp. 3d 824 (E.D. Va. 2021); Deng v. Crawford, No. 2:20-cv-199, 2020 WL 6387010 (E.D. Va. Sept. 30, 2020).

Sonko claims that his continued detention under § 1226(c) violates the Due Process Clause of the Fifth Amendment and seeks either immediate release from detention or an expedited bond hearing. Am. Pet. (ECF No. 16, at 2). After twenty-seven months, Petitioner's prolonged detention raises due process concerns,

which require weighing Sonko's liberty interest against the government's justification for his continued detention without a hearing. After applying the factors laid out by this court in Portillo v. Hott, I find they weigh in favor of granting Sonko a bond hearing and accordingly recommend the court so direct.[2]

**B. Balancing the Factors from Portillo v. Hott Suggests Sonko is Entitled to an Individualized Bond Hearing.**

Regarding the duration of detention, Sonko has already been detained for twenty-seven months, beginning on February 14, 2023. Am. Pet. (ECF No. 16, at 3). Additionally, although the final merits hearing for Sonko's motion to reopen is scheduled for July 30, 2025, he is likely to remain detained for longer while he pursues his case to avoid removal. Sonko's counsel informed the court of Sonko's desire to appeal an unfavorable decision on his motion to reopen, which could result in further delay in waiting for the BIA—and potentially the Fourth Circuit—to review Sonko's appeal. Further, it is possible that the government would similarly appeal the IJ's decision if Sonko's motion is granted, resulting in further delay.

Although Respondents are correct that Demore did not limit

---

[2] Respondents spend a majority of their brief urging the court to assess Sonko's continued detention under Demore v. Hyung Joon Kim, 538 U.S. 510 (2003), or alternatively, Mathews v. Eldridge, 424 U.S. 319 (1976), instead of the Portillo factors. See Opp'n (ECF No. 17, at 6-16). I have already adopted the Portillo factors as appropriate in Deng v. Crawford, No. 2:20-cv-199, 2020 WL 6387010, at *4-6 (E.D. Va. Sept. 30, 2020), and will apply those factors again here.

7

detentions to six months, "courts seem to agree that the constitutional case for continued detention without inquiry into its necessity becomes more and more suspect as detention continues past [the one-and-a-half-month average and six-month maximum] thresholds cited by the Supreme Court in Demore." Portillo, 322 F. Supp. 3d at 707 (quoting Haughton v. Crawford, No. 1:16-cv-634, 2016 WL 5899285, at *9 (E.D. Va. Oct. 7, 2016)). The length of Sonko's detention has far exceeded the point where courts within this district have granted a bond hearing. See, e.g., Portillo, 322 F. Supp. 3d at 707 (fourteen months); Mauricio-Vasquez v. Crawford, No. 1:16-cv-01422, 2017 WL 1476349, at *4 (E.D. Va. Apr. 24, 2017) (fifteen months); Songlin v. Crawford, No. 3:19-cv-895, 2020 WL 5240580, at *7 (E.D. Va. Sept. 2, 2020) (sixteen months); Abreu, 2025 WL 51475, at *5 (twenty-five, seventeen, and thirteen months).

Respondents also contend that the length of Sonko's detention is in large part because of Petitioner's actions. While it is true Petitioner waited several months before filing his motion to reopen, delays resulting from Sonko's own actions—though relevant—do not reset the clock to zero on Sonko's lengthy period of detention. The court cannot ignore the time Sonko remained detained because of other administrative and procedural setbacks independent of his actions. As the length of detention is considered "the most important" factor, and because Sonko has been

8

detained for twenty-seven months, this factor weighs heavily in Sonko's favor. Portillo, 322 F. Supp. 3d at 707 (quoting Haughton, 2016 WL 5899285, at *9).

The second factor, the length of time served for the underlying criminal conviction in comparison to the amount of time in ICE custody, weighs against Petitioner relative to others who received a bond hearing. Sonko was sentenced to eighty months[3] in prison, arising out of two serious felony convictions. Opp'n Ex. 1 (ECF 17-1, ¶ 6). Petitioner has been detained twenty-seven months, which is roughly a third of his eighty-month sentence. See Songlin, 2020 WL 5240580, at *7 (comparing 16-month civil detention to 48-month criminal sentence and finding that civil detention is "significantly shorter," weighing against Petitioner).

The third factor looks to whether the parties have engaged in dilatory tactics in bad faith. This factor weighs modestly against Petitioner also. With respect to the government's actions, Sonko's order of removal became final on March 10, 2024, and The Gambia did not issue Sonko's travel documents until eight months later on

---

[3] Under the second factor, Sonko states he was sentenced to fifty-six months incarceration. Am. Pet. (ECF No. 16, at 13). The government acknowledges that Sonko was sentenced to fifty-six months on the conspiracy to commit money laundering count and twenty-four months on the aggravated identity theft count, but similarly states he was sentenced to fifty-six months under factor two. Opp'n (ECF No. 17, at 3-4, 18). Because Sonko was sentenced to a total of eighty months, the court will use this figure under factor two. See Sonko v. United States, 5:15-cr-334-BO-2, ECF No. 336 (E.D.N.C. Feb. 6, 2018) (judgment).

9

November 14, 2024. See Am. Pet. (ECF No. 16, at 8); Opp'n Ex. 1 (ECF No. 17-1, ¶¶ 20-23). These documents were not delivered to Respondents until November 26, 2024. Opp'n Ex. 1 (ECF No. 17-1, ¶ 23). This eight-month delay does not appear to be caused by Respondents, but from The Gambia's delay in issuing Petitioner's travel documents.

However, Sonko never indicated he would reopen the proceedings and seek to contest removal—waiting until the day after his Gambian travel documents were delivered to file his motion to reopen. As Sonko argues, courts may not "impermissibly penalize an alien's exercise of legal rights." See Bah v. Barr, 409 F. Supp. 3d 464, 471-72 (E.D. Va. Sept. 6, 2019). But the Portillo factors require courts to balance both parties' role in producing the constitutionally suspect delay. This factor derives from Sopo v. Attorney General, 825 F.3d 1199 (11th Cir. 2016). See Haughton, 2016 WL 5899285, at *8 (citing Sopo, 825 F.3d at 1217 with respect to third factor). The court in Sopo considered "why the removal proceedings have become protracted," specifically "[e]vidence that the alien acted in bad faith or sought to deliberately slow the proceedings in hopes of obtaining release . . . ." 825 F.3d at 1217-18.

Here, the record suggests that Sonko's wife suffered various health concerns at the time his removal order became final, giving him the opportunity to file his motion to reopen earlier or to

10

raise his hardship argument during the original removal proceedings. Instead, it appears Sonko strategically waited until The Gambia delivered his travel documents to file his motion. The court does not take issue with Sonko's choice to exercise his right, but rather, his timing. Considering his responsibility and these circumstances, an earlier filing could have reduced Sonko's spent time detained. And without his filing one day later, Sonko's detention would likely have ended with his deportation shortly after The Gambia issued his travel documents. Thus, it appears that Sonko may have sought to "deliberately slow the proceedings in hopes of obtaining release." See id.

The fourth factor asks whether there are procedural or substantive legal errors responsible for significantly extending the detainee's detention. Sonko did not appeal the IJ's order of removal. Additionally, Sonko's motion to reopen is still pending before the IJ. Therefore, at this time, there do not appear to be any procedural or substantive errors that extended the time of detention, rendering this factor neutral.[4] See Abreu, 2025 WL 51475, at *6 (finding fourth factor neutral because case not yet resolved).

Finally, the last factor considered in Portillo is the

---

[4] Respondents point to various paperwork and document delays early in the proceedings, but at most these issues contributed less than a month to Sonko's prolonged detention. See Opp'n (ECF No. 17, at 4-5, 18).

11

likelihood that the government will secure a final order of removal against Petitioner. Because of Petitioner's pending motion to reopen, I cannot speculate how Petitioner's case will resolve. See Mauricio-Vasquez, 2017 WL 1476349, at *5 ("It is purely speculative to say what the [immigration judge] will do[.]"). This factor thus weighs in neither party's favor.

Because the first factor substantially favors Sonko, the second and third factors favor the government, and the other factors are neutral, I find that his prolonged detention without a hearing of any kind has become unreasonable and that Petitioner, while not entitled to immediate release, is entitled to a bond hearing. See Songlin, 2020 WL 5240580, at *8 (ordering bond hearing even though second, fourth, and fifth factors favor government because "the first factor strongly favors [Petitioner]").

Sonko also argues that due process requires that the burden of proof at such hearing falls on the government to prove he is a risk of not appearing. Am. Pet. (ECF No. 16, at 17-19). Although courts in this district frequently reach this conclusion, it is not mandated by the Portillo analysis itself. Portillo, 322 F. Supp. 3d at 709 (finding balance between individual and government interests requires placing burden on government); see Mbalivoto v. Hott, 527 F. Supp. 3d 838, 852 (E.D. Va. Aug. 11, 2020) (citing Bah, 409 F. Supp. 3d at 472-73) (addressing bond hearings for

12

detainees held under § 1225(b) and placing burden on government); Gutierrez v. Hott, 475 F. Supp. 3d 492, 499-500 (E.D. Va. 2020) (citing Bah, 409 F. Supp at 472) (placing burden on government); Urbina v. Barr, No. 1:20-cv-325, 2020 WL 3002344, at *7 (E.D. Va. June 4, 2020) (citing Bah, 409 F. Supp at 472) (same); Abreu, 2025 WL 51475, at *7 (same). Instead, the question is what level of due process is required to balance Sonko's liberty interest with the legitimate government interest in orderly removal proceedings. See Mathews, 424 U.S. at 335-49; Songlin, 2020 WL 5240580, at *8.

Given Sonko's length of detention, his "due process liberty interest outweighs the 'government's legitimate, nonpunitive interest in ensuring that he can be successfully deported if his [motion] is denied.'" Songlin, 2020 WL 5240580, at *8 (quoting Portillo, 322 F. Supp. 3d at 708). "This is so in part because the government's interest in guarding against [Sonko's] flight or danger to the community can be substantially protected even if [Sonko] is given an individualized bond hearing before an Immigration Judge where 'the burden of proof is on the alien to demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding.'" Id. (quoting Mauricio-Vasquez, 2017 WL 1476349, at *5) (internal citation omitted); see also 8 C.F.R. § 236.1(c)(8).

13

### III. RECOMMENDATION

For the reasons explained in detail above, I recommend that the court GRANT in part and DENY in part Petitioner's Amended Petition for a Writ of Habeas Corpus, (ECF No. 16), and order that Sonko be provided with an individualized bond hearing, where he will bear the burden of proof that he will not pose a danger and is likely to appear for any future proceeding. See 8 C.F.R. § 236.1(c)(8).

### IV. REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date this report is forwarded to the objecting party by Notice of Electronic Filing or mail, see 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. See Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2. A district judge shall make a de novo determination of those portions of this report or specified findings or

14

recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Newport News, Virginia
June 12, 2025